IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Brandon Pinkard, #280309, | ) | C/A No.: 1:13-3003-RBH-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| LeVern Cohen, Warden of Ridgeland Correctional Institution, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner Brandon Pinkard is an inmate at the Ridgeland Correctional Institution of the South Carolina Department of Corrections who, through counsel, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(c) (D.S.C.) for a Report and Recommendation on Respondent's return and motion for summary judgment. [Entry #12, #13]. The matter having been fully briefed [Entry #16, #17], it is ripe for disposition. Given the great deference to the state court judgment required by federal law, the undersigned is constrained to recommend that the court grant Respondent's motion for summary judgment.

I.      Factual and Procedural Background

The events giving rise to Petitioner's charge occurred on July 7, 2000, when Petitioner was sixteen years old. The trial testimony revealed that Petitioner had been upset that eighteen-year old Geovanni Shaffer had been talking with the mother of Petitioner's child. Petitioner, his brother Marcus Praylow, and two others approached Shaffer and his

friend. Shaffer called for his mother's fiancé, Roger Keitt, who attempted to diffuse the situation. Ultimately, a fist-fight ensued. Witnesses testified that Praylow and Keitt were fighting each other when Petitioner fatally shot Keitt. Petitioner was charged as an adult.

Petitioner's mother hired attorney Curtis Murph to assist Petitioner to surrender himself to police. Petitioner was released on bond and believed Murph was continuing to represent him. After Petitioner and/or his mother made a series of attempts to contact Murph, including at his office, they were informed that Murph was no longer authorized to practice law. [1] Murph shared space with attorney Harry C. DePew, who spoke with Petitioner's mother during one or more of her attempts to contact Murph. DePew took over representation of Petitioner.

Petitioner was indicted by the Richland County Grand Jury during the October 2000 term of court for murder (2000-GS-40-54328). [Entry #13-1 at 3–4].  DePew represented Petitioner at a jury trial on September 10–13, 2001, before the Honorable James R. Barber III, Circuit Court Judge. [Entry #13-1 at 5 *et seq.*]. After the jury found Petitioner guilty on the lesser-included voluntary manslaughter charge, Judge Barber sentenced him to 24 years. [Entry #13-4 at 56–57].

Petitioner appealed his convictions and sentences to the South Carolina Court of Appeals ("Court of Appeals"). On appeal, Petitioner was represented by Joseph L. Savitz III, Esq., Deputy Chief Attorney of the South Carolina Commission on Appellate Defense,

---

[1]  Murph was placed on interim suspension by order dated October 6, 2000. *See In re Murph*, 538 S.E.2d 652 (2000). Murph was disbarred by the South Carolina Supreme Court on June 3, 2002, retroactive to his interim suspension. *See In re Murph*, 564 S.E.2d 673 (2002). The court "may properly take judicial notice of matters of public record." *Philips v. Pitt Cnty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009).

who filed an *Anders*[2] brief, raising the following issue: "Since the identification of the shooter was the central issue in the case, the judge erred by refusing to allow Pinkard to display a prominent tattoo to the jury, except at the cost of forfeiting his right to final closing argument?" [Entry #13-4 at 73–81]. Petitioner filed a *pro se* response to the *Anders* brief, alleging, *inter alia*, lack of subject matter jurisdiction by the trial and appellate courts and trial court error. [Entry #13-4 at 94–121].

After additional briefing [Entry #13-4 at 73–81], on June 27, 2005, the Court of Appeals affirmed Petitioner's conviction. [Entry #13-4 at 122–23]. The Court of Appeals denied Petitioner's request for rehearing on August 26, 2005. [Entry #13-4 at 124–25]. On November 29, 2005, appellate counsel filed a petition for writ of certiorari to the South Carolina Supreme Court [Entry #13-10], which the court denied on January 4, 2007. [Entry #13-12].

Petitioner, through attorneys Greg Harris and Derk Van Raalte ("PCR counsel"), filed an application for post-conviction relief ("PCR") on October 26, 2007 [Entry #13-4 at 126–52], in which he alleged the following claims:

(1)    Defendant was denied the effective assistance of counsel in the plea stage by his attorney's failure to properly prepare and evaluate the case, evaluate the plea offer, and provide Defendant with advice regarding same in a manner that met minimally sufficient constitutional standards. As a result of his failure to properly investigate, prepare and evaluate the case, trial counsel failed to appropriately recommend

_____

[2] *Anders v. California*, 386 U.S. 738, 744 (1967), requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal, furnish a copy of that brief to the defendant, and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited.

acceptance of the plea offer under circumstances in which it was incompetent not to recommend acceptance. Had trial counsel made an appropriate recommendation the Defendant would have accepted the ten (10) year plea offer extended by the State on the eve of trial or even the twelve (12) year plea offer extended earlier. As a result, trial counsel's failure had a constitutionally significant impact on the sentence imposed in this case and constitutes grounds for the granting of post-conviction relief.

(2)    Defendant was denied the effective assistance of counsel in the trial stage by his attorney's failure to properly prepare, evaluate, and present the case in a manner that met the minimally sufficient constitutional standards. Trial counsel pursued a defense theory that was patently unreasonable under the circumstances (mistaken identity) and failed to pursue any viable defense theories or put forth any evidence in support thereof. Had trial counsel engaged in reasonable preparation and made a reasonably competent trial presentation Defendant believes it is reasonably likely that the trial may have been altered in a manner favorable to him. Accordingly, trial counsel's deficient performance rises to the constitutional proportions of which post-conviction relief is appropriate.

[Entry #13-4 at 128].

A PCR evidentiary hearing was held before the Honorable Alison R. Lee, Circuit Court Judge, on January 12, 2009, at which Petitioner and his PCR counsel appeared. [Entry #13-4 at 160 *et seq.*]. On August 31, 2011, Judge Lee issued an order of dismissal. [Entry #13-5 at 160–75]. PCR counsel filed a motion for reconsideration. [Entry #13-5 at 176–79]. By order filed October 5, 2011, Judge Lee denied the motion without oral argument. [Entry #13-5 at 180–82].

Petitioner appealed from the denial of PCR and was represented by attorneys Joshua Kendrick and Tivis Sutherland IV, who filed a petition for writ of certiorari in the South Carolina Supreme Court on March 14, 2012. [Entry #13-14, #13-15]. The petition raised the following issues:

(1)    Trial counsel was ineffective for failing to properly evaluate a plea offer from the state and for failing to properly advise petitioner on the plea offer.

(2)     Trial counsel was ineffective for offering no defense at trial and failing to properly prepare for trial.

[Entry #13-15 at 2].

The South Carolina Supreme Court denied the petition on August 8, 2013. [Entry #13-18].   The remittitur was issued on August 27, 2013. [Entry #13-19].

Petitioner filed this federal petition for a writ of habeas corpus on November 4, 2013.  [Entry #1].

II.     Discussion

A.     Federal Habeas Issues

Petitioner now[3] asserts he is entitled to a writ of habeas corpus on the following claim of ineffective assistance of counsel:

**Ground One**:            The Petitioner's right to the effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments, was violated by trial counsel's failure to sufficiently evaluate and convey the State's plea offer to Petitioner.

Supporting Facts: Prior to the Petitioner's trial, the State conveyed plea offers to trial counsel, including, according to trial counsel, a twelve-year plea deal to voluntary manslaughter and, according to the State's prosecutor, a plea deal to voluntary manslaughter with a cap of twenty years' imprisonment made approximately a month before trial. The Petitioner and several of his witnesses testified that trial counsel erroneously advised the Petitioner that he was extremely likely to be found not guilty. Furthermore, the Petitioner and his mother testified that trial counsel advised the Petitioner to reject all plea offers because he would be acquitted at trial. Trial counsel testified that he

_____

[3] In his response to summary judgment, Petitioner withdrew his Ground Two claim for ineffective assistance of counsel (alleging trial counsel failed to adequately prepare for trial and to present a valid defense at trial). *See* Entry #16 at 3.

tried to speak to the Petitioner about plea offers but that he was always rebuffed by the Petitioner's mother, who was always present for the meetings. Trial counsel, however, had an opportunity to speak to the Petitioner one-on-one during the trial—as the Petitioner was taken into custody during the trial and was housed at the detention center where trial counsel would have had access to the Petitioner without his mother present—and he did not meet with the Petitioner to discuss the plea offer. Under either version of events, trial counsel's performance was deficient, and the Petitioner was prejudiced because he would have taken the State's plea offer had he been represented by competent counsel.

[Entry #1 at 6].

B.    Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Id.*   At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.   *Id.* at 255.   However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon

mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

      C.      Habeas Corpus Standard of Review

      1.      Generally

Because Petitioner filed his petition after the effective date of the AEDPA, review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Noland v. French*, 134 F.3d 208, 213 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Respondent concedes that Petitioner timely pursued and exhausted his claim in Ground One.

2.    Ineffective Assistance of Counsel Claim

To prevail on his ineffective assistance of counsel claim, Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 131 S.Ct. at 787–88; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 131 S.Ct. at 788 (quoting *Padilla v. Kentucky*, 559 U.S.___, ___, 130 S.Ct. 1473, 1485, (2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 131 S.Ct. at 788. In such

circumstances, the "question is not whether counsel's actions were unreasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility of fairminded disagreement." *Id.* at 787. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786. Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)).

D.     Analysis

Petitioner alleges that trial counsel was ineffective in failing to properly evaluate the state's plea offer and to advise Petitioner of the plea offer. In his state PCR, Petitioner argued this same ground. Approximately three weeks before trial, the state offered in writing to let Petitioner plead guilty to voluntary manslaughter, with a twenty year cap, instead of going to trial. [Entry #13-4 at 674, #13-5 at 4–5]. At the PCR hearing, DePew was asked what he recalled regarding plea offers. He explained:

> I dealt mostly with, with Don, Don Sorenson. I believe that they've, they've had the plea offer here. I think it was twelve years. I approached [Petitioner] several times. Each time his mother was present, and she said my boy's not going to plead to anything. I tried several times to talk him into it. In fact, I tried several times to meet with him without her so that it could be effectively put to him. Every time I started talking about it, she would interrupt and say we don't want to hear about any plea or doing any time.

[Entry #13-5 at 96]. Further, DePew testified as follows:

Q:     And if he had wanted to plea, would you have tried to talk him out of that?
A:     No.

Q:     And did you go over with him—well, how extensive were your plea
       explanations with him? Sorry, let me, let me rephrase that. If he was always
       unwilling to plea, would you go over the fact that he would have to admit
       his guilt and everything at a plea?

A.     That was barely touched upon because each time, as I say, every time that I
       saw him, or just about every time that I saw—no, every time I saw him for
       any meaningful discussion, his mother was there. And I really couldn't even
       go too much forward with her saying we're not even discussing pleas. At
       the meeting where his uncle was there, I recall his uncle—or it's my
       recollection that his uncle said listen to your attorney, and she called him
       down.

Q.     And when you met with him alone without the family, was it a similar
       thing? Could you explain those meetings?

A.     I tried to explain it, and he always deferred to what his mother said.

. . .

Q.     And once again, and I hate to ask you again, but just final question. Was
       there ever any indication by the applicant that he wanted to admit guilt and
       go ahead and plea?

A.     No, there was not.

[Entry #13-5 at 99–101]. DePew further testified as follows:

Q.     Mr. DePew, you testified earlier that it was tough to talk to Brandon
       seriously about going into a plea because of his mom being in the room at
       the time, and the fact she didn't want to hear about it, right?

A.     That's correct.

Q.     Okay. You didn't approach the Court for help, or tell the Court you were
       having any problems with communicating with your client, did you?

A.     I can't recall.

Q.     Now, you told us today that there was no real defense to this case as far as
       getting him acquitted at a trial. Am I correct that you did a *Neil* motion on
       the off chance that you might be able to suppress some witnesses?

A.     I think you're misquoting me on that.

Q.     Okay.

A.     The only defense was misidentification, and that was the only thing to
       hang our hat on. Now, as to whether or not it is a good defense or a bad
       defense, I believe that's for the jury to decide.

Q.     Okay. You told the Court that that suppression motion is a sole issue in the
       case, didn't you?

A.     It was one of—it was just about the only issue that was there.

Q.     After the Court ruled against you on that *Neil vs. Biggers* motion, your
       odds of success—I mean, the case had gotten worse at that point when the
       judge had ruled, hadn't it?

A.   Yes, it had. All through this matter, I tried to convince Mr. Pinkard to plead guilty.

Q.   After the judge rejected that *Neil vs. Biggers* suppression motion, you didn't have any real thought that Brandon was going to walk out of that court acquitted, did you?

A.   I thought that there was enough, enough disparity in the identification that there could have been someone on the jury who thought that there could be enough. However, again I tried talking him into taking the plea, and if he doesn't want to take the plea, I've got to go forward.

[Entry #13-5 at 138–39]. DePew testified that after the first day of trial and having lost the critical *Neil v. Biggers* hearing, he spoke with Petitioner "without his mother because she was sequestered, and he still wanted to go forward with trial." [Entry #13-5 at 140]. DePew stated that he did not hire an investigator to interview witnesses because the family did not have the funds to hire one. DePew stated that he only had "one or two, maybe three" one-on-one meetings with Petitioner without his mother or other family and friends present. [Entry #13-5 at 127].

At PCR, Petitioner himself testified that he had met with his attorney, DePew, only a few times prior to the trial, mostly to make payments. Petitioner testified that he had followed counsel's advice. He stated that prior to post-conviction proceedings, DePew had not effectively communicated to him the plea offer and had not encouraged him to take it. Petitioner explained: "I mean, I was a child. I mean, I trusted what he told me, and I took the advice, what he said, what Mr. DePew told me at the time. He said don't, don't worry about it." [Entry #13-5 at 78].

The PCR court found as follows:

> In the present case, Applicant has failed to establish that trial counsel failed to render reasonably effective assistance under prevailing professional norms at the plea stage. Based on the credible testimony, trial counsel communicated the plea offer(s) to the Applicant. Trial counsel advised the Applicant several times throughout the course of the representation to take the plea, including once after the trial judge ruled against defendant at the pre-trial hearing to suppress the testimony of the State's witnesses. Each time Applicant rejected the plea offer and indicated that he wished to proceed to trial. The Applicant's own testimony was that he did not want to serve any prison time and thought he could go home. Applicant's trial counsel was not ineffective, even in hindsight if he advised the Applicant that there was a good chance the charge could be beat. Even if trial counsel misadvised the Applicant to reject the State's offer(s), both *Turner* and *Judge* reveal a factual basis which is absent from the case at bar, and there is otherwise no basis in the record for this Court to conclude that Applicant's trial counsel rendered ineffective assistance or that the Applicant was prejudiced. The *Judge* case found trial counsel's advice to reject the plea was deficient because the attorney had not properly reviewed the Brady materials prior to advising defendant on whether to accept the plea. Such a situation does not exist in the case at hand.

> Applicant testified that in hindsight he would have pled guilty to voluntary manslaughter had trial counsel provided an accurate assessment of his likelihood of success at trial and had he known trial counsel did not hire an investigator to work the case. Trial counsel testified he advised Applicant to take the plea on several occasions, but each time Applicant deferred to his mother who insisted Applicant reject the plea. The decision to reject any plea offer is one for the defendant. In this case, Applicant rejected the plea offer after trial counsel advised him on several occasions to take the plea. Even taking the Applicant's claims of misadvice regarding the likelihood of success at trial into consideration, the Applicant has failed to overcome the presumption that counsel was effective in-order to receive relief. *Cherry v. State*, 300 S.C. 115, 386 S.E.2d 624 (1989). Any "misadvice" trial counsel may have provided regarding the likelihood of success at trial did not result in the deprivation of any constitutional or other right to which the Applicant was entitled.

[Entry #13-5 at 169–70].

Petitioner focuses on the first *Strickland* prong—deficiency in representation. Petitioner argues that DePew grossly overestimated his chances of success at trial and his "misidentification" defense was no defense at all. Petitioner argues that it was extremely unlikely that any identifications of Petitioner as the shooter would have been suppressed, and trial counsel's strategy admitted Petitioner's presence at the scene. He argues that under these circumstances, DePew's advice to him that he had a 75% chance of success at trial constituted clear deficient performance. Further, Petitioner argues that trial counsel's erroneous advice regarding the possibility of an acquittal directly led to his rejection of the state's plea offer. Accordingly, Petitioner argues that the PCR court's conclusion that defense counsel's performance was not deficient constitutes an unreasonable application of *Strickland*.

Petitioner argues that DePew admitted at the PCR hearing that he could never meet with Petitioner so the state's plea offer "could be effectively put to him." [Entry #13-5 at 96]. Petitioner argues there is no indication from DePew that he ever fully conveyed the full advantages and disadvantages of the state's plea offer to him. Petitioner argues this was DePew's obligation under *Missouri v. Frye*, ___ U.S. ___, 132 S.Ct. 1399, 1408 (2012) ("as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused") and *Libretti v. United States*, 516 U.S. 29, 50 (1995) ("it is the responsibility of defense counsel to inform a defendant of the advantages and disadvantages of a plea agreement"). Petitioner argues that DePew's failure to sufficiently convey the state's plea offer to him constitutes clear, unmistakable, deficient conduct.

Even assuming deficient conduct, Petitioner must still demonstrate prejudice. Petitioner cites to *Lafler v. Cooper*, 132 S.Ct. 1376 (2012) for support. In *Lafler*, the Court forth the relevant prejudice inquiry that a criminal defendant must meet in order to be granted relief for failure to properly convey a plea offer:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S.Ct. at 1385.

Petitioner notes that the PCR court stated that "where the alleged deficient performance of counsel causes a defendant to reject an opportunity to plead and to receive his constitutionally guaranteed fair trial, it is impossible to resuscitate the original opportunity." [Entry #13-5 at 170]. Petitioner argues that the PCR court applied an incorrect standard of review and should have applied the standard enunciated in *Lafler*, *i.e.*, (1) that a specific offer to voluntary manslaughter with a negotiated cap of twenty years' imprisonment was made on August 16, 2001, less than a month prior to trial; (2) there is also a reasonable probability that the state court would have accepted Petitioner's plea had one been presented to it; and (3) that the terms of the offer were less severe than the 24-year sentence Petitioner received. Petitioner requests the court, pursuant to *Lafler*, order the state to reopen the plea offer and permit Petitioner to plead guilty to the offer of voluntary manslaughter with a cap of twenty years, leaving the state court with the discretion to

impose a conviction and sentence in accordance with the plea offer or in accordance with the ultimate penalty issued at trial.

In reply, Respondent notes that the PCR court found to the contrary. Specifically, the PCR court found that trial counsel communicated the plea and advised Petitioner to take the plea, but Petitioner rejected the plea offer and indicated that he wished to proceed to trial. [Entry #13-5 at 169]. At PCR, DePew testified that he spoke to Petitioner without his mother after the *Neil v. Biggers* hearing and advised him to plead guilty. [Entry #13-5 at 139–40]. Petitioner's testimony at the PCR hearing directly contradicts trial counsel's testimony: "[H]e said you have a fifty/fifty chance, but the fifty is in your favor now. He said the fifty is still in your favor." [Entry #13-5 at 94]. Nevertheless, the PCR court found that trial counsel advised Petitioner to take the plea after the pre-trial hearing. [Entry #13-5 at 169].

The undersigned notes the PCR court did not have the benefit of the Supreme Court's 2012 opinion in *Lafler* at the time it issued its order denying and dismissing Petitioner's PCR application in 2011. To the extent that Petitioner argues that he should be granted habeas relief based on *Lafler*, the court is constrained to deny this argument.[4]

Respondent argues, and the undersigned is constrained to agree, that Petitioner

---

[4] Several courts have found that *Lafler* did not announce a new right, rather the Supreme Court simply discussed well-known principles regarding an attorney's responsibility under the Sixth and Fourteenth Amendments during plea negotiations. The courts that have considered the issue of retroactivity have held that *Lafler* is not retroactive to cases on collateral review because the Supreme Court did not announce a new rule of constitutional law. *See, e.g., In re Graham,* 714 F.3d 1181, 1182–83 (10th Cir. 2013) (per curiam); *In re Perez,* 682 F.3d 930, 932–34 (11th Cir. 2012); *In re King,* 697 F.3d 1189 (5th Cir. 2012); *Hare v. United States,* 688 F.3d 878, 880 (7th Cir. 2012); *Benefield v. Perritt,* 2014 WL 1368729 (E.D.N.C. 2014). Assuming without deciding that *Lafler* is applicable to Petitioner's case, it still does not appear to provide the relief the Petitioner seeks.

cannot meet all the requirements of *Lafler*. Specifically, Petitioner has not demonstrated that he would have accepted the offer had trial counsel effectively conveyed the offer to him. A review of the record shows that Petitioner and his mother, to whom Petitioner often deferred, were not willing to consider an offer that involved Petitioner serving time. The PCR court found that Petitioner "rejected the plea offer after trial counsel advised him on several occasions to take the plea." [Entry #13-5 at 169]. Even at the PCR hearing, Petitioner himself acknowledged having received Sorenson's offer:

A:    The fourth meeting occurred around, it was roughly—I can't say exactly. August. It was about the plea offer.
Q:    So, there was a plea offer as early as August?
A.    It was, it was a plea offer, a paper from the Court, Don Sorenson talking about a plea. But it wasn't, wasn't really pertaining to—it was pertaining to the twelve years at the time. And it was around like—that was my—the meeting, he just said to my family about a plea offer. Said don't worry about that, he told me at the time. Don't worry about no paperwork right now. Don't you worry about a plea offer. Just we got this seventy-five percent chance. Don't worry about a plea offer right now. There's nothing to worry about.

[Entry #13-5 at 69].

When asked whether he ever confessed to his attorney that he had indeed done the crime, Petitioner testified, "No, sir." [Entry #13-5 at 82–83]. Likewise, Petitioner's mother testified as follows:

Q:    Did you tell him, or did he tell you he did it?
A:    No, sir.
Q:    He never told you that he shot that boy?
A:    No, sir.
Q:    So how could you tell him to take the deal, then, even now with looking back?
A:    Due to the evidence and the witnesses.
Q:    So, you would tell him now to plead to a crime that he says he didn't do?
A:    He didn't tell me whether he did or didn't. So.

[Entry #13-5 at 27].

The PCR court's factual determination regarding credibility is entitled to deference in this action. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008), (citing 28 U.S.C. § 2254(e)(1) (for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear)); s*ee also Marshall v. Lonberger*, 459 U.S. 422, 434, (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them").

As the PCR court noted, due to DePew's representation, Petitioner was acquitted of murder and was convicted of voluntary manslaughter—the same charge that the state offered.

The undersigned finds that Petitioner has failed to overcome the deferential standard of review accorded the state PCR court's determination of this issue and has failed to demonstrate that his counsel's performance was otherwise deficient. Petitioner has not shown that the state court's analysis of this issue misapplied clearly established federal law or, even if there was an error, that it was unreasonable. *See Williams*, 529 U.S. at 410.

Based on the foregoing, Petitioner is not entitled to federal habeas relief on this ground and it is recommended that it be dismissed.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that Respondent's motion for summary judgment [Entry #13] be granted.

IT IS SO RECOMMENDED.

June 20, 2014                                 Shiva V. Hodges
Columbia, South Carolina              United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.   Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.   "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"   *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*   Fed. R. Civ. P. 6(a), (d).   Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**   28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).